CHARLES C. BUNKER *v.* GREAT FALLS MANUFACTURING CO.

*Matthews & Varney* (*Mr. Varney* orally), for the plaintiff.

*Lucier & Lucier* (*Mr. Alvin A. Lucier* orally), for the defendant.

Branch, J. In its brief and argument the defendant seeks to establish three legal propositions which may be stated as follows: 1. That there is no evidence that the displacement of plaintiff's kneecap was caused by the accident in question; 2. That the settlement receipt signed by the plaintiff operated like a release under seal to bar him "from proceeding further under the act"; 3. That the only mistake of the parties was one of opinion as to further developments based upon fully disclosed facts which furnishes no ground for equitable relief.

1. In support of its contention that there was no proof that the displacement of plaintiff's kneecap was due to the accident, the defendant relies upon the evidence that the x-ray plates taken soon after the accident showed no such displacement, and argues that a possible cause for the present condition of the plaintiff's knee is evidenced by his admission that he had another fall about twenty months after the accident.

It should be noted in the first place that the plaintiff's complaint was not primarily of a displaced kneecap, but of a persistent weakness and lameness in the knee which disabled him from work. Whether these symptoms resulted from the displaced kneecap or whether the weakness of the muscles and tendons of the knee permitted the cap to slip out of place did not appear. So far as the evidence showed, the displacement of the kneecap was merely an objective manifestation of trouble with the knee, and the question whether the displacement existed at the time of settlement or developed subsequently is not necessarily decisive of the plaintiff's rights.

Even upon the defendant's theory of the case, however, its argument is not conclusive. The evidence of the expert who took the plates was that they showed no disturbance of the kneecap "from an x-ray view point"; that they showed "a normal location of the kneecap" and that if there had been any other injury aside from the fracture, he "would expect" that the x-ray would "show it all right." A physical examination of plaintiff's knee made at the trial showed that the position of the kneecap was normal when the leg was extended, but that when the leg was bent at an angle of ninety degrees the cap was displaced upward about one-third of an inch. It appeared that the x-ray plates were taken with the knee "partially flexed." Hence it was not clearly shown that the position of the leg when the x-ray plates were taken was one which would have revealed the displacement if it had then existed. The expert further testified that

he did not attribute the plaintiff's present condition to the accident "with the evidence of the injury that I saw," but when asked to what he would attribute it "with the injury as the only history in the case" he replied, "Well, I wouldn't wish to say."

The plaintiff's description of his subsequent fall would hardly justify and much less compel a conclusion that the displacement of his kneecap resulted therefrom. His testimony was that about twenty months after the accident, he slipped down and hurt his elbow, but that it "never hurt the knee at all."

The defendant's surgeon, who treated the plaintiff, was a witness and did not deny that the present condition of his knee was a result of the accident. On the contrary his testimony clearly implied that it was so caused. In answer to questions by the court, he testified as follows: "*Court:* From the examination that you have made today, has the result been as you expected? *Witness:* Well, the injuries to the knee joint, they are very slow and I think it is not doing as well as I expected. *Court:* You don't think it is doing as well, didn't do as well as you expected? *Witness:* No."

The testimony of the plaintiff was clear and emphatic to the effect that his disability had continued without interruption since the date of the accident, and this testimony justified the conclusion of the court that his present condition resulted from the injury sustained at that time.

2. Defendant's view of the nature and effect of the settlement receipt cannot be adopted. It is several times referred to in defendant's brief as a release, and the suggestion is made that it "was in the nature of a waiver of the rights to which the plaintiff was entitled under the workmen's compensation act," but it bears little resemblance to either a release or a waiver. It states the amounts received by the plaintiff and what they were paid for, but by its terms the plaintiff releases nothing and waives nothing. This is not "a writing which partakes of the nature both of a contract and a receipt." *Goodwin* v. *Goodwin*, 59 N. H. 548, 550. It is legally only what it purports to be — a receipt in full for compensation due under the act. It evidences no compromise of liability but merely an admission by the plaintiff that an unquestioned liability had been fully satisfied. A receipt, like any other admission, may be explained or contradicted. *Gleason* v. *Sawyer*, 22 N. H. 85; *Goodwin* v. *Goodwin*, *supra*. It does not come within the scope of the parol evidence rule, because it is not intended to be an exclusive memorial of the agreement of the parties. 5 Wig., Ev., s. 2432. A receipt in full is *prima facie* evidence

only upon the question whether the whole of the debt has been paid, and cannot operate as a discharge of claims not within the contemplation of the parties when it was executed. By the receipt in question the plaintiff admitted that the sums which he had received measured the full extent of the defendant's liability, but the basis of this admission was open to explanation and if it proved to be based upon a mistaken assurance that his disability had terminated, the admission ceased to have binding force. "The fact admitted by the receipt may be simply shown to be otherwise, and that may be done by any evidence calculated to satisfy the minds of the jury, either by direct proof, or by circumstances tending to the same result." *Gleason* v. *Sawyer, supra*. The ruling of the trial court that the plaintiff was not barred by this receipt was correct.

3. Such being the nature of the instrument relied upon by the defendant, its third contention becomes nugatory. Since the plaintiff has entered into no contractual relation with the defendant by virtue of the settlement receipt, the question whether he has made out a case for equitable relief from the effect of a release ceases to be of interest. In order to justify a decree for the plaintiff, it was only necessary for the trial court to find that he had not received the full compensation to which he was entitled under the statute. Although not expressed in these terms, such a finding was clearly made by the court, and, therefore, the order must be

*Exceptions overruled.*

All concurred.