BRUNS et al., Respondents, v. LIGHT et al., Appellants

(54 N. W.2d 99)

(File No. 9280. Opinion filed June 16, 1952)

**Dana & Maron, Cherry, Braithwaite & Cadwell,** Sioux Falls, for Appellants.

**C. C. Caldwell,** Sioux Falls, for Respondents.

LEEDOM, J. Respondents, building contractors, brought this action to recover a balance claimed to be owing on an oral agreement for the construction of appellants' dwelling. As a part of their original cause of action, respondents sought to have a "Lien Waiver" reformed to eliminate therefrom language reciting that respondents had received payment in full for all labor and materials furnished in the construction. In an amended complaint the claim for the balance owing and the claim for reformation of the instrument were stated in separate causes of action. Appellants denied owing any sum whatsoever on the contract, pleaded the "Lien Waiver" as a full release of liability and counterclaimed for $5,000 on account of alleged defects in the construction. The equitable action for reformation and the law action for breach of contract were tried simultaneously to the court, and to the jury, respectively, on the same evidence. The court found that the "full payment" provisions of the "Lien Waiver" had been included without intention to discharge the liability on obligations not actually paid; and the jury returned a general verdict in favor of respondents for $4,000 plus interest, somewhat less than the full amount claimed, apparently making a small allowance on appellants' counterclaim. We affirm the judgment entered on the verdict.

Respondents brought the action on the theory that they had entered into an oral contract with appellants to build the latter a home for cost of all necessary labor and materials plus 10% thereof, with the 10% item fixed at a maximum equal to 10% of the estimate of total cost of labor and materials furnished appellants by respondents prior to the beginning of construction. Appellants took the position that originally there had been a definite oral agreement that the dwelling would be constructed at a cost equal to the figure respondents claim to be only an estimate, that the actual cost on the date the "Lien Waiver" was given exceeded this original agreed cost and that appellants had agreed to pay the increased cost on that date and made

final settlement, demanding and receiving as a condition precedent to payment the lien waiver which constituted a full release.

The real problem in the case involves the instrument variously referred to in the record as "receipt" and "release" and which was actually entitled "'Lien Waiver". It was admittedly prepared by Wm. B. Bruns of respondents who was in charge of the work, on one of a supply of forms kept by respondents, and was duly signed and delivered by him to appellants at the latter's request. The instrument is as follows:

"Lien Waiver

"Nov. 3, 1948

"The undersigned acknowledges receipt from

**Mr. & Mrs. Richard Light**

~~BRUNS CONSTRUCTION COMPANY~~ payment in full **for all labor and materials** By The Undersigned Delivered Or Furnished To (or performed at) **a residence and garage at 2125 W 20th St. Sioux Falls S. D.** and for value received waives all rights acquired by the undersigned to file mechanic's liens against said premises.

**Bruns Const Co**
**W B Bruns**"

(Parts boldfaced were written in longhand and the balance was the mimeographed form.)

Evidence was taken by the court as to the circumstances under which this instrument was executed and delivered. Testimony on this point given by Richard M. Light of appellants, and Mr. Bruns is sharply in dispute. Light testified in substance that when he was asked for an additional $5,000 payment on the contract price, after the house was substantially completed, he declined to make the payment except upon delivery to him of a final release from all further liability; that he believed the payments previously made by him as construction had progressed approximately equaled bills currently incurred and that the final $5,000 payment made when he obtained the lien waiver, bringing the total payments in excess of the price originally agreed upon as he claimed, equaled approximately the total of all outstand-

ing bills and that such payment was acepted in final settlement thereof by respondents. No testimony was offered to show the substance of a dispute over the amount owing at this time nor of actual conversation resulting in the claimed settlement.

Bruns testified in substance that when he asked Light for the $5,000 payment Light advised him that in connection with the completion of the FHA loan on the dwelling it would be necessary for Light to have a statement indicating that Bruns waived the right to file a lien on the property and that Light would not make the payment without such a waiver, that Bruns was agreeable to give such an instrument and did give the "Lien Waiver" with a "gentlemen's" agreement on the side that he would wait until after the first of the year for the balance owing, the exact amount thereof being then unknown to him inasmuch as bills for numerous items had not yet been rendered although the materials had been supplied.

Appellants admitted having received statements introduced in evidence showing the amount of bills incurred as the work progressed up to the time that the lien waiver was given. They denied however having received such a statement showing the items constituting the balance for which respondents later sued submitted after the lien waiver was given. There was evidence offered from which the jury might well have concluded that this last statement was received and that a substantial period of time elapsed prior to the institution of suit without appellant Light having questioned it.

More than a year after the lien waiver was given, Light wrote Bruns a letter listing defective items in the construction and stating "no further approach towards final settlement can be made until the following deficiencies are corrected in the house * * *. When these corrections are made I shall be glad to further discuss this matter with you."

It is conceded that the question as to defects in construction set up in appellants' counterclaim was resolved against appellants and in favor of respondents by the general verdict of the jury.

█ In addition to the submission to the jury of the question of liability on the alleged breach of contract, the court asked the jury to render an advisory verdict as to whether or not the lien waiver signed by Bruns had been "executed by mistake and without the intention of releasing defendants from any liability for a balance owing or claimed to be owing". The jury answered this question in the affirmative. The court while not bound by this special verdict did enter a finding of fact to the same effect, that is that the lien waiver had been signed without intention to release appellants from obligations not actually paid.

The court instructed the jury in connection with the action for damages that the burden of proof was upon the respondents to establish their case by a preponderance of the evidence, and that the burden was on appellants to prove the claimed settlement or release by respondents. With reference to the advisory verdict the court gave the jury the statutory definition of a mistake of fact, SDC 10.0312, and in addition instructed in substance that when through a mistake a written contract does not truly express the intention of the parties it may be revised, but gave no indication of the degree or quantum of proof required for reformation. Appellants took exception to this instruction for its failure to require clear and convincing proof.

In our view the case presents two questions: (1) Was the "Lien Waiver" a release or a receipt? and, (2) If the lien waiver was merely a receipt, were the proceedings in the trial court with respect thereto such as to result in a valid general verdict of the jury?

Appellants argue that the lien waiver was a release and not a mere receipt and therefore extinguished appellants' obligation; that it was not executed as a result of a mistake, or fraud on the part of appellants, but rather with a full and complete understanding by all parties as to its contents with respondent Bruns claiming at the most that the writing though clear enough as to its terms, provided for an agreement different than an oral agreement made at the same time on the same subject; that a reformation of the release was not supported by clear, unequivocal and convincing evidence as to which the jury was not properly in-

structed; that even if the lien waiver should be construed as a receipt rather than a release it could be overcome only by clear and convincing evidence more than a mere preponderance; and finally that the terms of the written instrument could not be varied by parol evidence.

We hold that as to the parts of the lien waiver here at issue, that is as to the provision "The undersigned acknowledges receipt from Mr. and Mrs. Light payment in full for all labor and materials", the instrument is not contractual and therefore is a receipt rather than a release. Since it is not contractual the parol evidence rule has no application. See Greve v. Bisson, 69 S. D. 208, 8 N.W.2d 859. Difficulty is encountered in determining whether a writing is or is not contractual in nature. As indicated in the Greve case a receipt is treated as an admission of circumstances that may or may not have existed. If the circumstances did not in fact exist then the admission may be overcome by other evidence; whereas a release is contractual in that a pre-existing right is extinguished by the writing itself.

The legal principles employed by the trial court involved first the taking of evidence relating to claimed negotiations out of which the "Lien Waiver" came into existence so that the court by a comparison of the negotiations and the writing could determine whether or not the "full payment" provisions were actually intended by the parties to discharge all the liabilities that appellants had incurred under their agreement with respondents, **assuming** that the negotiations revealed by the testimony actually took place. At this point the taking of such testimony was only provisional. From the evidence thus taken concerning the negotiations the record justifies the conclusion that the judge was of the opinion there was a basis for finding that a discharge of appellants' obligation was not intended to be covered by the writing, and so he submitted the evidence to the jury for a determination as to whether or not such negotiations **did actually take place** as claimed by respondent Bruns. See IX Wigmore Ev. §§ 2430, 2432. This joint inquiry of the judge and the jury resulted in the conclusion that the acknowledgment of full payment was outside the

intention of the parties, and constituted an erroneous admission by respondents on a phase of the transaction not actually integrated with the writing. We fail to find anything in the record that warrants our disturbing such result.

■ Since the record warrants the determination that the "Lien Waiver" was a receipt rather than a release in the controversial part, it is our view the equity action seeking a reformation of the instrument becomes an unnecessary appendage to respondents' case. The record discloses and respondents' counsel indicated in argument that at one time in the proceeding it was the intention, for understandable tactical reasons, to get a determination of the equity action and the instrument reformed if possible, before the trial of the damage action to the jury. As the matter developed however and the two causes were tried together, the "Lien Waiver" in its original form went to the jury as a part of the evidence in the breach of contract action. The jury having considered the lien waiver along with the other evidence submitted and having resolved the issues in favor of respondents, it becomes apparent that it is of little consequence to respondents' position that the lien waiver actually be reformed. Reformation was important to respondents only if the lien waiver were contractual. As we see it the submission of the special interrogatory to the jury in connection wth the action for reformation, being entirely discretionary and advisory with the judge, neither helped respondents' case in view of the favorable general verdict, nor did such submission prejudice appellants' rights in the litigation. It therefore follows that the instruction which the court gave to the jury with reference to the special interrogatory and likewise the court's failure to inform the jury on the law of evidence in a reformation case, have little bearing on appellants' rights. It also follows that appellants' contention the lien waiver was not executed as a result of a mistake which would have justified reformation of a contract, becomes irrelevant although it appears to us it would have considerable merit if the issue were pertinent.

■ While appellants now take exception to the instructions given by the court to the jury cn the weight and quality of proof required to overcome the effect of the receipt.

no exception was taken before the trial court except as to to the advisory verdict, nor did appellants request different instructions on this subject. Notwithstanding such record it is now claimed that the proof to overcome a written receipt must be clear and convincing. In view of the condition of the record appellants are not in a position to question the sufficiency of the proof to support the verdict and it is not necessary for us to determine the kind of proof required to overcome this receipt.

Inasmuch however as clear and convincing proof of an alleged mistake is required as a condition precedent to reformation of a written contract, and since the court dealt with the reformation of the document and did not advise the jury on quantum of proof and such failure formed the basis of an exception by appellants, we choose to consider the matter of the sufficiency of the evidence to support this general verdict, even though as previously stated such consideration is not in our opinion necessary to the decision nor warranted by the record. To reach this issue it is necessary that we disregard the line, quite certainly indiscernible to the jury, that divided the special interrogatory of the equity action and the general verdict required of the jury in the damage action, and treat appellants' exception to the instructions as to quality of proof required to reform a contract as if the exception had been taken on an instruction as to the kind of proof required to merely overcome a written receipt.

■■ This court said in Medin v. Brookfield, 66 S. D. 209, 213, 281 N.W. 97, 99: "Whether the evidence in a given case is clear and convincing is a question in the first instance to be determined by the trial court, and its conclusion is not to be disturbed by this court unless it can be said after an examination of the entire record and all circumstances surrounding the transaction as therein disclosed that the clear preponderance of the evidence is against the findings of the trial court * * *". See also Jones v. Jones, 67 S. D. 200, 291 N.W. 579, and Seubert v. Seubert, 68 S. D. 195, 299 N.W. 873. While the cited cases and the language quoted from the Medin case relate to equity actions involving findings, the principle has equal application to a verdict. Furthermore

it is our view that the evidence required to overcome a written receipt need not be the clear, unequivocal and convincing proof of a mistake required to support the reformation of a written contract. We believe the rule to be as stated in 70 C.J.S., Payment, § 49: "Generally, one attacking a receipt must establish the facts by a clear and unmistakable preponderance of the evidence, since a receipt usually is considered to be evidence of a high order as to the truth of its recitals, but ordinarily it is for the jury to determine the weight to be given to statements contained in the receipt, and such statements may be overcome by any evidence calculated to satisfy the minds of the jury." As against the niceties and refinements in the language used by judges in instructions to juries and in opinions dealing with the kind and the quality and the weight of evidence required in certain situations the practicality of the phrase "and such statements may be overcome by any evidence calculated to satisfy the minds of the jury", in the above quotation, appeals to us as being particularly appliable here. This part of the rule comes from Gleason v. Sawyer, 22 N.H. 85, in which the court said: "The fact admitted by the receipt may be simply shown to be otherwise, and that may be done by any evidence calculated to satisfy the minds of the jury either by direct proof or by circumstances tending to the same result." This excerpt from the opinion in the Gleason case is quoted in Bunker v. Great Falls Mfg. Co., 84 N.H. 84, 146 A. 529, from the opinion of which lengthly quotations appear in IX Wigmore Ev. § 2432, cited above. Obviously the proof submitted to the jury in the instant case in addition to the "Lien Waiver" was clear enough to convince the jury that the "full payment" feature of the waiver was contrary to the facts of the transaction. We fail to find either any error of law or clear preponderance of evidence against the jury's general verdict that would justify our setting such verdict aside.

The judgment of the trial court is affirmed.

All the Judges concur.