**Carol A. MACY, Appellant,**

**v.**

**UNITED STATES of America.**

**No. 76–2421.**

United States Court of Appeals, Third Circuit.

Argued June 9, 1977.

Decided July 5, 1977.

Saul Davis, Pittsburgh, Pa., for appellant.

John P. Panneton, Asst. U.S. Atty., Pittsburgh, Pa., Blair A. Griffith, U.S. Atty.,

Judith K. Giltenboth, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before ALDISERT, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

We are to decide if written communications between the Post Office Department and appellant constituted a release precluding appellant from bringing a claim for personal injuries under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The district court found a binding release to exist under 28 U.S.C. § 2672 and granted summary judgment for the government. We vacate the judgment and remand for further proceedings.

Section 2672 provides in pertinent part: The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.

It is the government's contention that there was a meeting of the minds by the parties on "a compromise or settlement" and, in the statutory formulation, "[t]he acceptance by the claimant of any . . . compromise, or settlement [was] final and conclusive" on the part of Ms. Macy, the claimant.

Reduced to its essence, the controversy draws upon classic fundamentals of the law of contracts and requires a step-by-step analysis of the negotiations between the parties, set forth in documents presented to the district court in the summary judgment proceedings.

### I.

On November 23, 1973, a mail truck struck Ms. Macy's car. On January 8, 1974, Ms. Macy submitted to the Pittsburgh Postmaster the standard form 95–105, labelled "Claim for Damage, Injury or Death". The form contains printed instructions, including:

If claimant intends to file claim for both personal injury and property damages, claim for both must be shown on line 10 of this form. Separate claims for personal injury and property damage are not acceptable.

On line 10A, labelled "Amount of Claim—Property," plaintiff entered the sum of $565.40; line 10B, labelled "Amount of Claim—Personal Injury," was left blank; line 10D, labelled "Amount of Claim—Total," shows $565.40. Immediately above the place on the form providing for the claimant's signature, the printed form reads "I certify that the amount of claim covers only damages and injuries caused by the accident *and agree to accept said amount* in full satisfaction and *final settlement of this claim.*" In completing the form, however, Ms. Macy altered these printed words by striking out the italicized portion and adding to the statement the phrase "if it covers the damages".

Although it is conceded that Form 95 as presented could be considered as an offer by Ms. Macy to settle a claim for $565.40, her offer was not accepted. Instead, on January 24, 1974, a postal inspector wrote to Ms. Macy acknowledging receipt of the $565.40 offer, rejecting it and stating:

If you agree that the $550.10 [a lower estimate for the auto damage] is a fair payment, it would be appreciated if you would forward to me a signed and dated letter advising that you will accept the lower amount. If you disagree, I would also like to be notified of your reason for the disagreement.

At oral argument, government counsel characterized the inspector's letter as the government's counter-offer, and not as an acceptance of the claim set forth in Form 95. Building on this theory, the government contends that its counter-offer to settle the claim was accepted by Ms. Macy in her written response of January 28, 1974:

In reply to your letter of January 24, 1974 I agree to accept payment from you

in the amount of $550.10, to be used to repair my vehicle resulting from the collision on December 6, 1973,[1] where I was struck by a Post Office vehicle.

At this juncture it would seem that the appropriate procedure for the government would have been to submit a new Form 95 insisting that Ms. Macy execute the document with its binding, printed language intact. The government did not do so.

Disregarding the use of its Form 95 entirely,[2] the Postal Service then forwarded a check in the sum of $550.10 to Ms. Macy in a letter on January 31, 1974 stating, in pertinent part:

A settlement check in the amount of $550.10 is enclosed.

Acceptance of the above amount operates as a complete release of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim by reason of the same subject matter.

This payment represents the full amount of your claim.

Ms. Macy responded on February 12, 1974:

This is to acknowledge receipt of your postal service check in the amount of $550.10, which I am using for payment of repairs to my vehicle resulting from an accident with one of your postal trucks.

I wish to advise at this time that this amount does not cover my medical expenses resulting from injury from that accident. I am undergoing treatment now and will advise you as to the extent of my injuries and cost at a later date, when they are known to me.

She later cashed the check and subsequently pressed a new claim for personal injuries.

## II.

Distilled to its essence, the government's argument comes to this: the exchange of correspondence of January 24–January 28 constituted the settlement agreement; the exchange of January 31–February 12 and the subsequent cashing of the check constituted the release. Clearly, the January 24–28 correspondence cannot be characterized as a settlement agreement. There simply was no meeting of the minds. What remains is the inquiry whether the subsequent correspondence and activity rose to the dignity of a binding contractual obligation on the part of Ms. Macy to release the government from all future claims.

We are not satisfied that the government's counter-offer of $550.10 of January 31, 1974 was accepted by Ms. Macy on February 12, 1974 as "a complete release of any claim". She specifically couched her response with express conditions not contained in the offer. It is hornbook law that a release is the relinquishment, concession or giving up of a right, claim or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced.[3] Because an actual release is to be distinguished from a promise to release, *McNutt v. Loney*, 153 Pa. 281, 25 A. 1088 (1893), a mere proposal to be followed by an agreement for release is not a release. *Grota v. LaBoccetta*, 425 Pa. 620, 230 A.2d 206 (1967); *Hoffman v. Bloomsburg & S. R. Co.*, 157 Pa. 174, 27 A. 564 (1893). A release is contractual in nature, *The Cayuga*, 59 F. 483 (6th Cir. 1893); *Rill v. Darling*, 21 A.D.2d 955, 251 N.Y.S.2d 396 (1964); *Bruns v. Light*, 74 S.D. 418, 54 N.W.2d 99 (1952), and it has been held to be a contract or a species of a contract. *Little Rock Packing Co. v. Massachusetts Bonding & Ins. Co.*, 262 F.2d 327 (8th Cir. 1959); *Sears, Sucsy &*

1. The accident occurred on November 23, 1973. The Form 95 was dated December 6, 1973.

2. Therefore, for our purposes, the January 8, 1974 Form 95 has no controlling significance, the government conceding that it was supplanted by the government's counter-offer set forth in a letter, not a Form 95. We thus need not hypothesize what would have been the consequences had the government accepted Ms. Macy's original $565.40 offer set forth in the Form 95 as altered by her.

3. See cases collected in 76 C.J.S. Release § 1, n. 1.

*Co. v. Insurance Co. of North America,* 392 F.Supp. 398 (N.D.Ill.1974).

Thus, to characterize Ms. Macy's conduct as a binding release requires the court to find that (1) she offered to relinquish or concede a right, claim or privilege and (2) the offer was accepted by the government. At best, what was presented to the district court was the January 31, 1974 proposal by the government which solicited an agreement to release from Ms. Macy. But in her February 12, 1974 letter she did not agree to release on the submitted proposal. At best, her response was a counter-offer to release on property damages only, to-wit, she was accepting the $550.10 as payment in full of property damages to her car. There was no acceptance of the government's offer, no meeting of the minds. There was no contract to release.

## III.

To argue that the decision here turns on whether we apply federal law or Pennsylvania law of contracts is to introduce a false conflict. The parties have not cited, nor does our independent research reveal, any distinction in the fundamentals of contract or release law between the federal and state authorities. Indeed, we have previously held that "[t]he applicable Pennsylvania law is not incongruous with federal antitrust objectives. In Pennsylvania, the general rule for construction of releases is that the intention of the parties must govern, but this intention must be gathered from the language of the release." *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 892 (3d Cir. 1975), *citing Evans v. Marks,* 421 Pa. 146, 218 A.2d 802 (1966). When the Federal Tort Claims Act is implicated, as here, and the substantive law governing the claim is "the law of the place where the act or omission occurred," 28 U.S.C. §§ 1346(b) and 2672, there should be even less reluctance to draw upon the common law of Pennsylvania.

Reliance on 28 U.S.C. § 2672 does not help the government. For our purposes, it simply codifies certain principles of contract law: if there is "acceptance by the claimant" of an offer of "compromise, or settlement" by the government, that acceptance "shall constitute a complete release". The necessary inquiry here is to isolate the offer and acceptance. Only when these elements present a meeting of the minds may we find an agreement by the claimant to relinquish her right.

If anything, the federal release statute militates against the government's theory. Section 2672 does not provide that acceptance of payment of cash or a government check operates as a "complete release". In order to constitute a "complete release of any claim", Congress specifically provided that the acceptance be (1) an award,[4] (2) a compromise, or (3) a settlement.

The Postal Service's letter of January 31, 1974 was an attempt to create a contractual release, not precisely authorized by the statute, to-wit, an offer that acceptance of a check would operate "as a complete release". Since § 2672 does not provide that acceptance of a check operates as a release, the government must rely on common law contract principles. The offeree, Ms. Macy, responded with a counter-offer, and cashed the check. Under these circumstances neither a contractual nor a statutory release was entered into by Ms. Macy.

To qualify as a release under the statute, there had to be a compromise or settlement reached by a meeting of the minds. We find none. On the basis of the documentary evidence presented to the district court, we hold that it was error to find a release. Accordingly, it was also error to grant summary judgment in favor of the government on the theory that the claimant had accepted an "award, compromise or settlement" which constituted a release of "any claim against the United States".

---

4. No "award" was involved here. An award is generally considered as the judgment or decision of arbitrators or referees on a matter submitted to them. *Keiser v. Berks County,* 253 Pa. 167, 97 A. 1067 (1916). Here, there was no proceeding before any extrajudicial tribunal resulting in a decision, *i. e.,* an award, in favor of the claimant.

The judgment of the district court awarding summary judgment will be vacated and the cause remanded for further proceedings.