**MIKROPUL CORPORATION, Plaintiff,**

v.

**DESIMONE & CHAPLIN–AIRTECH, INC. and Vincent J. Desimone and James E. Chaplin, doing business as Desimone, Chaplin and Associates, Consulting Engineers, Defendants.**

No. 83 Civ. 8445 (RWS).

United States District Court,
S.D. New York.

Dec. 28, 1984.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiff; Peter Aron, New York City, of counsel.

Wilson, Elser, Edelman & Dicker, New York City, for defendants; Stephen M. Marcellino, Eugene H. Goldberg, New York City, of counsel.

## OPINION

SWEET, District Judge.

This diversity action arises from contractual disputes surrounding the construction of an air pollution control facility at United States Steel's ("USS") Fairless, Pennsylvania plant. Defendants Vincent DeSimone ("DeSimone") and James Chaplin ("Chaplin"), doing business as DeSimone, Chaplin and Associates ("DSC"), have moved for summary judgment pursuant to Fed.R. Civ.P. 56 dismissing that portion of Mikropol's ("Mikropol") fourth and fifth causes of action that seeks recovery of money for an alleged failure of DSC to design piles for tension and also, separately, dismissing the fourth cause of action in its entirety. DSC also seeks an order pursuant to Fed. R.Civ.P. 12(f) striking paragraph 36 of Mikropol's fifth cause of action. All motions are denied.

### Alleged Facts

Mikropol seeks damages for defendants' fraudulent inducement and breach of contract, negligence, and professional malpractice in connection with a contract awarded by Mikropol to DeSimone & Chaplin-Airtech ("Airtech"). Mikropol, a Delaware corporation with its principal place of business at Summit, New Jersey, provides services and equipment to industrial customers to aid in insuring compliance with air pollution requirements. Airtech is a New York corporation with its principal place of business in New York, New York. DSC is a partnership whose partners, DeSimone and Chaplin, reside in New York. The principal place of business of DSC is New York, New York.

On April 1, 1980 Mikropol entered into a contract with USS for the design and construction of an air pollution control system at USS' steel manufacturing facility in Fairless, Pennsylvania. Mikropol invited competing bids from vendors and subcontractors in response to specifications provided by Mikropol.

One of the competing bids submitted for the design and engineering subcontract was from Airtech. Mikropol alleges that the Airtech bid claimed that Airtech had been in business since 1969, that Airtech employed eighteen engineers, designers, and consultants, that DeSimone and Chaplin were primary technical personnel of Airtech, and that both would be active on the Fairless project. Mikropol also alleges that these representations were reinforced by statements made and appearances set forth by DeSimone in a visit to Airtech's offices by Mikropol officials. Mikropol, in reliance on these statements granted Airtech the subcontract.

Mikropol now asserts that Airtech has been in business since 1976, not 1969, that Airtech employed fewer than eighteen professionals, that any work performed by DeSimone and Chaplin was not performed directly for Airtech but was performed for DSC in its capacity as a "subcontractor" of Airtech, despite the prior representation that DeSimone and Chaplin were primary employees of Airtech. Mikropol maintains further that although Airtech was presented as a viable engineering firm, it was really an under-capitalized, virtually assetless shell corporation designed to shield DSC from primary liability.

Mikropol also alleges that Airtech and the other defendants, as "subcontractors," did not use reasonable and professional

care in designing the piles for the Fairless plant, causing $650,000 in damage. Mikropol maintains that subsequent to discovering the nature of the design error, Mikropol and USS reached an agreement designed to allocate the immediate costs of corrective measures so that completion of the Fairless plant could be as expeditious as possible. Mikropol maintains that this agreement did not constitute a settlement of the liability resulting from the design errors nor did it contain a release from any further effort by USS to recover damages.

DSC asserts that no contract existed between DSC and Mikropol and that any work done by DSC in connection with the Fairless project was done in DSC's capacity as a subcontractor of Airtech. DSC also alleges that the agreement between USS and Mikropol allocating repair costs represented a resolution and settlement of the liabilities resulting from the improper design of the piles for the Fairless plant.

**Discussion**

Motions for summary judgment cannot be granted when material issues of fact remain to be resolved, and the burden is on the moving party to establish that no relevant facts are in dispute. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4 (2d Cir.1983). The court cannot try issues of fact, and "[i]ndeed, the court must resolve all ambiguities and resolve all inferences in favor of the party against whom summary judgment is sought." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (*quoting Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319 (2d Cir.1975)).

An initial hurdle in this case is to determine which state's substantive law to apply. The decision to apply either New York, Pennsylvania, or New Jersey law is not dispositive of these motions, given the near equivalence of these states' laws in the relevant areas and the major factual issues that remain to be resolved. For the reasons set forth below, New York law will be applied, but this conclusion is subject to change upon further evidence concerning the interest and contacts involved. *See*

*Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 455 n. 36 (S.D.N.Y.1976).

The New York substantive law, of course, includes choice of law rules. *Day and Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxton Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The general rule in New York tort cases is still that of *lex loci delicti*. *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). The place of the wrong in this case is New York: any alleged negligence or malpractice in the design work occurred either at Airtech or DSC, both located at 20 Waterside Plaza, New York. Moreover, although the Fairless plant is in Pennsylvania, a grouping of contacts test, *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y. S.2d 734, 735, 237 N.E.2d 877 (1968), requires that New York law be applied. The defendants reside in New York; the DSC subcontract was executed in New York; the defendants are licensed professionals in New York; and Airtech is incorporated in New York. Finally, the interests of New York in regulating the conduct involved are greater than those of the other states. *Delbrueck & Co. v. Mfrs. Hanover Trust Co.*, 464 F.Supp. 989, 993 (S.D.N.Y.) *aff'd*, 609 F.2d 1047 (2d Cir.1979); *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). New York has the greatest interest in insuring that professionals licensed to practice in this state comply with the standard of care imposed by New York, and New York has a paramount interest in preserving the integrity of the corporate form under New York law by regulating the standards which control piercing the veil of New York corporations.

The gravamen of DSC's motion for summary judgment on the tension/compression element of the fourth and fifth causes of action is that Mikropol effected a settlement with USS and therefore is precluded by General Obligation Law § 15–108 from bringing an action for contribution. DSC argues that the interchange of letters and

the series of meetings which preceded the agreement to divide the costs of correcting the design error constitute a release and final compromise of the claim.

■ Both a settlement and release are contracts to which the ordinary rules of contract interpretation apply. *See e.g., Macy v. United States*, 557 F.2d 391, 393 (3d Cir.1977) ("It is hornbook law that a release is the relinquishment, concession or giving up of a right, claim or privilege ... and it has been held to be a contract or a species of a contract.") *Mt. Read Terminal, Inc. v. LeChase Const. Corp.*, 58 A.D.2d 1034, 396 N.Y.S.2d 959, 960 (4th Dept.1977) ("Releases are contractual in nature, and whether a release is general ... depends upon the intention of the parties.") In order for there to be a settlement or a release, therefore, the parties must intend to terminate or discharge the claims being asserted, *see Martin v. Traver*, 19 A.D.2d 571, 239 N.Y.S.2d 781 (1963); *Macy, supra.*

Mikropol asserts vigorously that the letters which constituted the parties' agreement was neither a settlement nor a release. Indeed, Mikropol claims that the intent of the parties was that Mikropol would continue to be liable for any defects or improper performance.

■ Because a factual dispute exists as to the intent of the parties at the time they concluded the interim agreement, this court cannot, for the purposes of a motion for summary judgment, accept as a premise that a settlement for the purposes of GOL § 15–108 exists. This Circuit has stated that "[w]here contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper." *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). *See Putnam v. Ostego Mutual Fire Ins. Co.*, 41 A.D.2d 981, 343 N.Y.S.2d 736, 778–9 (3d Dept.1973) ("[T]here is a conflict concerning the intention of the parties [with respect to the alleged compromise and settlement] and, since the parties did not waive the right to

a resolution of questions of fact by a jury ... summary judgment should not have been granted.") *Shindler v. Lamb*, 25 Misc.2d 810, 211 N.Y.S.2d 762, 766 (S.Ct. 1959), *aff'd*, 10 A.D.2d 826, 200 N.Y.S.2d 346 (1st Dept.), *aff'd*, 9 N.Y.2d 621, 210 N.Y.S.2d 226, 172 N.E.2d 79 (1961) ("[The] claim of release is a question of fact to be raised ... and decided at the trial.")

DSC's second motion for summary judgment seeks to dismiss the fourth count in its entirety on the theory that there is no privity between Mikropol and DSC. In support of this motion DSC argues that as a subcontractor of Airtech with no contractual obligations to Mikropol, DSC is immune from Mikropol's action. This motion fails on two grounds: first, material issues of fact exist with respect to Mikropol's motion to pierce Airtech's corporate veil and recognize DSC as the real party in interest in the contract, thereby creating privity, and second, under New York law a professional may, in certain circumstances, be liable to a foreseeable plaintiff even in the absence of privity.

■ In New York, several criteria are paramount in determining whether to pierce a corporate veil: 1) the absence of the formalities which are part and parcel of normal corporate existence, *i.e.*, the election of directors, keeping of corporate records; 2) inadequate capitalization; 3) personal use of corporate funds; and 4) the perpetration of fraud by means of the corporate vehicle. *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984), *citing Bartle v. Finkelstein*, 19 A.D.2d 256, 241 N.Y.S.2d 655 (1963), *Quaid v. Ratkowsky*, 183 A.D. 428, 170 N.Y.S. 812 (1918). Further, a corporation's form may be disregarded where the corporation has been a mere shell "dominated and controlled by the individuals to carry on their own personal business." *England Strohl/Denigris, Inc. v. Weiner*, 538 F.Supp. 612, 613, 614 (S.D.N.Y.1982), *citing Astrocom Electronics v. Lafayette Radio*, 63 A.D.2d 765, 404 N.Y.S.2d 742 (3d Dept. 1978).

Mikropol alleges that Airtech is a "mere dummy for its individual shareholders who are in reality carrying on the business in their personal capacities for personal rather than corporate ends," *quoting Walkouszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). Mikropol claims that since Airtech's formation DeSimone and Chaplin have controlled and dominated Airtech's operations in such a way that its primary function was to shield DSC from prospective liability. Mikropol claims that Airtech was purposely undercapitalized, has filed no income tax returns since 1978, maintains no malpractice insurance, and used DSC's resources in a supposed "contractor-subcontractor relationship" to cover Airtech's lack of substance. Further, Mikropol alleges that Airtech failed to observe requisite corporate formalities and misled clients with respect to the scope of Airtech's resources and capitalization. Mikropol further claims that DSC, because of its control and domination of Airtech, should be recognized as a principal bound by the ratified actions of its agent. *See Walkousky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 587, 223 N.E.2d 6 (Ct.App.1966).

■ Although DSC disputes both the factual allegations and the conclusions based upon them, genuine issues of material fact have been raised which must be resolved before legal certainty can attach to a decision with respect to the existence of privity. On this basis alone, DSC's second motion for summary judgment can be denied.

Mikropol has also asserted a negligence cause of action against DSC based upon Mikropol's status as a foreseeable plaintiff, even in the absence of privity. In *Quintel v. Citibank*, 589 F.Supp. 1235 (1984), I examined the negligence liability of professionals to persons not in privity. There I concluded that *White v. Guarante*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977), in which an accountant was found liable to the limited partners although he was retained by the general partners, did not extend to make a lawyer

retained by general partners liable in negligence to limited partners. I emphasized that the privity requirement had been more stringently observed in the context of a lawyer's liability, in part because of the particular ethical restraints imposed on an attorney representing a client. Those restraints effectively create a narrow range of foreseeable clients. "To hold that a limited partner is automatically a foreseeable client of the attorney representing the general partners or even the limited partnership, in the absence of any affirmative assumption of duty by the attorney, would ignore Ethical Consideration 5–18 which specifically defines the attorney's allegiance to the entity that retained him rather than to any person connected with the entity." At 1241–42.

No such ethical restraints distinguish architects or engineers from accountants, who were the subject of analysis in *White, supra,* and *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). I find that on the facts of this case architects and engineers fall within the rule established by *White, supra,* and *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922). In *White* the Court of Appeals concluded:

Defendant Andersen's contention, that plaintiff falls beyond the bounds of protected parties, rests primarily on the theory that its contract with the limited partnership circumscribed the extent of its obligation and the outer limits of its care. This reasoning fails to recognize that "[t]he duty of reasonable care in the performance of a contract is not always owed solely to the person with whom the contract is made * * * It may inure to the benefit of others." While *Ultramares* made it clear that accountants were not to be liable in negligence on the generalized basis that a contract for professional services creates liability in favor of the general populace, this plaintiff seeks redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the

limited partnership agreed upon arrangement.

*See Calamari v. Grace,* 98 A.D.2d 74, 469 N.Y.S.2d 942, 946 (1983) (recognizing as an exception to requirement of privity situations "where the abstracter should have foreseen that a third party would rely on the abstract.")

 In *J. McKinney & Son v. Lake Placid 1980 Olympic G.,* 92 A.D.2d 991, 461 N.Y.S.2d 483 (3d Dept.1983) the Court used the *White* formulation to determine the liabilities of various parties in a construction setting. In holding a project manager liable to a subcontractor the Court stated: "As project manager, Gilbare was required to 'manage, supervise, and inspect the construction.' ... These duties can reasonably be said to inure to the benefit of subcontractors as well as the owner for the former are 'members of a limited class' whose reliance upon the project manager's ability is clearly foreseeable." *Citing White, McKinney,* 461 N.Y. S.2d at 486. On the facts as presented to the court, it appears that Mikropol was within the range of foreseeable beneficiaries defined by *White.* An action in negligence brought by Mikropol against DSC therefore survives.

■ DSC also seeks, pursuant to Fed.R. Civ.P. 12(f), to strike paragraph 36 of the complaint. The standard that must be met in order to strike material pursuant to 12(f) is a stringent one. "A motion to strike immaterial or impertinent matter from a pleading will ordinarily not be granted unless the matter sought to be stricken clearly can have 'no possible relation' to the matter in controversy." *Gleason v. Chain Service Restaurant,* 300 F.Supp. 1241, 1257 (S.D.N.Y.1969), *aff'd,* 422 F.2d 343 (2d Cir.1970). The circuit courts have also suggested delay in determining whether material in the pleadings deserves to be stricken, recommending that only as a trial unfolds can a determination of relevance be properly made. *See Lipsky v. Commonwealth United Corp.,* 551 F.2d 887 (2d Cir.1976). Whether, or under what circumstances, the material relating to Airtech's

failure to obtain malpractice insurance will be presented to the jury is an evidentiary question that best awaits later determination.

**Conclusion**

DSC's motions for summary judgment and to strike paragraph 36 are denied. Discovery shall be completed by April 3 and a joint pretrial order submitted by April 10, 1985.

**IT IS SO ORDERED.**