SHRED–IT USA INC., et al., Plaintiffs,

v.

MOBILE DATA SHRED,
et al., Defendants.

No. 02 CIV.1967(VM).

United States District Court,
S.D. New York.

Sept. 16, 2002.

Gabrielle Lisa Gould, Robert N. Holtz-man, Kramer, Levin, Naftalis & Frankel, New York City, for Shred–It USA, Inc., Shred–It Canada, Inc.

Kashif Molamusa, Kashif Molamusa, West Paterson, NJ, for Mobile Data Shred, Inc., Michel Bohbot.

Michael Gross, Hackensack, NJ, for Nit-za I. Cruz, Executive Mobile Shredding.

## *DECISION AND ORDER*

MARRERO, District Judge.

In a Decision and Order dated May 20, 2002, after several months of discovery, the Court directed the parties to be ready to start a trial in this matter on July 16, 2002. The date for the start of the trial was later re-scheduled to September 9, 2002 and on June 12, 2002 plaintiffs filed an amended complaint. On July 10, 2002, defendant Michel Bohbot (hereinafter "Bohbot") answered plaintiffs' amended complaint and asserted ten counter-claims. On August 5, 2002, plaintiffs moved for

summary judgment on all of Bohbot's counter-claims, asserting that they presented no genuine issues of material fact for trial. On August 16, 2002, Bohbot filed an opposition and on August 16, 2002, plaintiffs filed a response.

At the start of the trial on September 9, 2002, the Court granted plaintiffs' motion. Accordingly, for the reasons set forth in the Court's statement on the record on September 9, 2002, a copy of which is attached hereto and incorporated in this Order, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment dismissing defendant Bohbot's counterclaims is GRANTED.

**SO ORDERED.**

### Attachment

### Ruling on Shred-it's Motion for Summary Judgment on Defendant Bohbot's Counter-claims

In this statement the Court addresses Shred-it's motion for summary judgment on defendant Michel Bohbot's counterclaims. Having reviewed the papers submitted in connection with Shred-it's motion and Bohbot's opposition, the Court grants the motion for the reasons discussed below.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate an absence of any genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To support a granting of the motion, the Court must determine from the record before it that a reasonable trier of fact would not be able to find in favor of the non-movant. *See Brady v. Colchester*, 863 F.2d 205, 211 (2d

Cir.1988). In considering the motion, the evidence is viewed in the light most favorable to the non-moving party, and reasonable inferences and factual conflicts are resolved in his favor. *See Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir. 1992).

However, if the moving party meets his initial burden, the opposing party is required to come forward with materials setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on conclusory statements or on mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996) (citing *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1, 3–4 (2d Cir. 1985) and *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983)).

In the instant case, Shred-it has met its burden of establishing that there is no genuine issue of material fact with respect to any of Bohbot's counterclaims. In response to Shred-it's motion, Bohbot has provided nothing more than conclusory assertions and scattered references to unsupported, self-serving statements made during his deposition. Although the precise nature of his ten counter-claims are not entirely clear, they appear to be based on theories of fraud, defamation, breach of contract, tortious interference with economic advantage, and conversion. The Court will address each theory in turn.

### Breach of Contract

Bohbot alleges that he entered into three oral agreement with Shred-it that were separate and distinct from the Asset Purchase Agreement. In the first alleged agreement, Shred-it orally agreed to pay him $25,000 per month to help retain dissatisfied customers around January 2002. In the second alleged agreement, Shred-it promised to grant Bohbot the exclusive

right to operate a document destruction business in Italy. In the third alleged agreement, Shred-it orally promised to pay Bohbot one million dollars for the assets of Mobile Data Shred from an unidentified "offshore account." This payment of one million dollars was to be in addition to the purchase price clearly written in the Asset Purchase agreement. According Bohbot, Shred-it informed him that this payment needed to be omitted from the Asset Purchase Agreement for business reasons.

Each of these alleged agreements, supported by nothing more than Bohbot's self-serving statements in his own deposition, contradict the unambiguous language of the Asset Purchase Agreement and fail as a matter of law. The signature page of the Asset Purchase Agreement, with Bohbot's signature, contains an initialed handwritten addition stating that Bohbot agrees to work for no compensation for one month after the date of the closing. Furthermore, section 6.05 of the asset purchase agreement states that the agreement constitutes the *entire* agreement among the parties and supersedes any prior understanding or agreements. Section 6.06 of the same agreement states that no modification or amendment shall be valid unless it is made in writing and duly executed by both parties.

Under New York law, an agreement with such a clause cannot be orally modified or amended. *See* New York General Obligation Law § 15–301(1); *see also Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir.1990). Bohbot's conclusory assertions that these agreements were separate and distinct from the asset purchase agreement are insufficient to create a genuine issue of material fact. The alleged oral agreements directly relate to sale of the assets of Mobile Data Shred and Bohbot has provided no evidence that would establish that the asset purchase agreement was limited in some respect or that it could be orally modified after closing. It is simply incomprehensible why Shred-it would draft a lengthy asset purchase agreement which states that it is the complete agreement in all respects and then orally agree to pay an extra one million dollars from an unidentified offshore account.

### Fraud

To the extent that Bohbot pleads fraud claims based on the same oral agreements, there is an absence of any genuine issue of material fact with respect to these claims as well. Under certain circumstances, a contractual party may be liable in tort if its defective performance of contractual services results in injury to the person or property of the other contractual party. *See Netzer v. Continuity Graphic Associates, Inc.*, 963 F.Supp. 1308, 1320 (S.D.N.Y.1997). For claims alleging only economic loss, however, the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie. *See Long Island Lighting Co. v. Transamerica Delaval*, 646 F.Supp. 1442, 1457 (S.D.N.Y.1986). Furthermore, it is a "well established principle that a ... breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). In the instant case, Bohbot presents almost no evidence to support his assertion that the oral agreements even existed. But even if these agreements did exist, he seeks recovery for economic loss, not for injury to his person or damage to his property, and thus Bohbot has no tort action relating to the performance of the alleged oral agreements. *See AT & T v. New York City Human Resources Admin.*, 833 F.Supp. 962, 985 (S.D.N.Y.1993); *Board of Educ. of*

*Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987).

### Tortious Interference with Prospective Economic Advantage

Bohbot asserts that Shred-it tortiously interfered with his relationship with the Bank of New York. In his deposition, Bohbot claimed that Shred-it sent the Bank of New York documents pertaining to his relationship with Shred-it and that as a result, the Bank of New York became nervous and froze his credit line. However, aside from these self serving statements, Bohbot has provided neither documents nor third party testimony that might create a genuine issue of material fact. Bohbot has not identified who sent the alleged documents, what they contained, and who received them. There is simply nothing in the record to support this claim other than Bohbot's vague accusations in his deposition. Accordingly, this claim also fails as a matter of law. *See Gottlieb,* 84 F.3d at 518.

### Defamation

Bohbot makes a number of general assertions that Shred-it defamed him. He claims that Shred-it stated to others that he committed auto theft, that he lied to his customers, that he was bankrupt and that he had fled the United States. Again, there is no evidence in the record to support these claims. In his papers opposing Shred-it's motion, Bohbot claims that Shred-it called the police in bad-faith. However, the only evidence in the record is that Shred-it employees thought that a Shred-it truck was missing and called the police to report this. There is no evidence that any Shred-it employee informed the police that Bohbot or Mobile Data Shred had stolen the truck.

Furthermore, under New York defamation law, statements made to the police in a reasonable manner and for a proper purpose are entitled to a qualified privilege. *See Nevin v. Citibank, N.A.,* 107 F.Supp.2d 333, 344 (S.D.N.Y.2000). In the instant case, the record clearly establishes that the police were called for a proper purpose and thus, even if Bohbot's name had been mentioned, his defamation claim would fail as a matter of law. Regarding Bohbot's claim that Shred-it made defamatory statements about him to the Bank of New York, there is no evidence in the record to support this. The fact that Bohbot believes that discovery is not finished with respect to this claim is not a proper reason to deny Shred-it's motion. The discovery and trial schedule for this case have been set for many months. Bohbot has failed to explain why he was unable to comply with the discovery deadlines which he previously assented to and is in no position to claim that he needs additional discovery just before the trial is to commence.

### Conversion

Bohbot's final claim is based on an alleged agreement that the trucks of Mobile Data Shred would be transferred to Shred-it on a staggered schedule. The existence of such an agreement is not entirely clear from the face of the asset purchase agreement but even if it were true, there is simply no evidence in the record that Shred-it took possession of any particular truck. Without more, Bohbot's conversion claim is unsupported by any facts in the record.