444 F.Supp.2d 231 (2006)
SOFI CLASSIC S.A. DE C.V. and Grupo Industrial Miro, S.A. de C.V., Plaintiffs,
v.
David HUROWITZ and James Long, Defendants.
No. 05 Civ. 9986.
United States District Court, S.D. New York.
August 7, 2006.
*232 *233 *234 *235 Bruce Roy Millar Ewing, Marc Schuyler Reiner, Dorsey & Whitney LLP, New York, NY, Juan C. Basombrio, Dorsey & Whitney LLP(CA), Irvine, CA, for Plaintiffs.
Isaac S. Greaney, Sidley Austin LLP(NY), New York, NY, Philip D. Chen, Sidley Austin LLP, Washington, DC, for Defendants.

DECISION AND ORDER
MARRERO, District Judge.
Plaintiffs Sofi Classics, S.A. de C.V. and Grupo Industrial Miro, S.A. de C.V. (collectively, "Plaintiffs") brought this action against David Hurowitz ("Hurowitz") and James Long ("Long") in a complaint (the "Complaint") alleging fraud, breach of contract, breach of fiduciary duty, and unjust enrichment, and requesting a declaratory judgment. Hurowitz moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6).
By letter dated January 19, 2006, Long's counsel moved to withdraw on the ground that Long died on or around December 12, 2005. The Court granted Long's counsel's motion to withdraw. On March 15, 2006, Judy B. Long ("J.Long"), the Personal Representative of the Estate of James Long, moved to be substituted as the defendant in this action. The Court granted this motion. On April 24, 2006, J. Long moved to dismiss the complaint and adopted the Memorandum in Support of the Motion to Dismiss of David A. Hurowitz. By letter dated April 24, 2006, Plaintiffs' counsel informed the Court that Plaintiffs have no objection to the substitution of J. Long for Long, or to J. Long's joining the motion to dismiss previously filed by Hurowitz. Accordingly, the Court orders that the motion to dismiss filed by Hurowitz be deemed to have been made on behalf of J. Long as well. Below, Hurowitz and J. Long collectively will be referred to as "Defendants."
For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

I. BACKGROUND[1]
This proceeding arises from a dispute between Plaintiffs, Mexican corporations that manufacture garments, and two companies, MHPG, Inc. ("MHPG"), incorporated in Massachusetts, and Four Seasons Screenprinting, Inc. ("Four Seasons"), incorporated in South Carolina (MHPG and Four Seasons collectively will be referred to as the "Corporations"). Hurowitz and Long were the officers and principal shareholders in MHPG and Four Seasons, respectively.
The Complaint alleges that at all relevant times, MHPG and Four Seasons were operated jointly by Defendants with respect to their dealings with Plaintiffs. The Complaint also alleges that MHPG and Four Seasons were "merged" prior to their dealings with Plaintiffs. (Compl.ś 8.)
In late 2000, Plaintiffs entered into an agreement with MHPG and Four Seasons to form a joint venture for the purpose of manufacturing garments and other goods in Mexico for sale in the United States (the "Joint Venture Agreement"). The Joint Venture Agreement was negotiated by Hurowitz and Long, acting on behalf of MHPG and Four Seasons, respectively, and Asian Cohen and others acting on behalf of Plaintiffs.
After negotiating the Joint Venture Agreement, the Plaintiffs and the Corporations began the process of forming a legal *236 entity for purposes of carrying out the joint venture. The legal entity was to be called "M-cubed." However, the parties began implementing the terms of the Joint Venture Agreement without waiting for Mcubed to be legally established.
From early 2001 through late 2001, Plaintiffs manufactured garments and shipped them to the Corporations pursuant to the Joint Venture Agreement. Those garments were sold in the United States by the Corporations. The Corporations allegedly failed to make the required payments to Plaintiffs for the garments. Hurowitz and Long allegedly represented to Plaintiffs that the Corporations' failure to pay for the garments was a "temporary payment problem," and in reliance on these representations, Plaintiffs shipped additional garments to the Corporations. Plaintiffs' shipments to the Corporations allegedly totaled over $2 million worth of goods.
In 2001, MHPG filed an action against Plaintiffs in the United States District Court for the District of Massachusetts related to disputes arising from the Joint Venture Agreement. On July 31, 2001, Plaintiffs and the Corporations executed a settlement agreement (the "Settlement Agreement") resolving that action. Pursuant to the Settlement Agreement, the Corporations executed promissory notes and guarantees and agreed to pay Plaintiffs in excess of $2.7 million.
The Corporations allegedly defaulted on their payment obligations under the Settlement Agreement. In early 2003, Plaintiffs filed an action against the Corporations in the Supreme Court of the State of New York, County of New York, alleging breach of the Settlement Agreement. Plaintiffs thereafter obtained judgments against the Corporations for breach of the Settlement Agreement and subsequently attempted to enforce the judgments. Plaintiffs allege that they have been unsuccessful to date in their efforts to enforce the judgments because the companies "appear to have been looted of all their assets." (Compl. at ś 26.)
Plaintiffs allege that although Hurowitz and Long were not parties to the Joint Venture and Settlement Agreements, piercing the corporate veil of the Corporations is warranted to hold Hurowitz and Long personally liable for the breach asserted. As discussed in greater detail below, Plaintiffs assert that Hurowitz and Long "completely dominated and controlled" the Corporations and perpetuated fraud through that domination.
Plaintiffs further claim that Defendants made misrepresentations and intentionally concealed material facts from Plaintiffs and that Plaintiffs relied on those misrepresentations and omissions and were thereby fraudulently induced to enter into the Joint Venture Agreement, to ship goods to the Corporations in connection with the Joint Venture Agreement, and to execute the Settlement Agreement. Specifically, Plaintiffs allege that, at the time that the Joint Venture Agreement and Settlement Agreement were entered into, Hurowitz and Long "actively conceal[ed]" from Plaintiffs: that the Corporations were financially incapable of making the required payments to Plaintiffs; that the Corporations owed a debt of over $6 million to certain unidentified lending institutions; that the Corporations had instituted a "lockbox arrangement" with those unidentified lending institutions prior to entering into the Joint Venture Agreement that entailed routing payments from customers of the Corporations directly to a "lockbox" used by the lending institutions to pay down the line of credit; and that pursuant to the "lockbox" arrangement, the lending institutions provided the Corporations "sufficient funds only to make some payments, continue operations and *237 collect inventory, which was then sold to pay down the line of credit." (Compl.ś 17.) Plaintiffs charge that Hurowitz and Long concealed that they had personally guaranteed, and thus were personally liable for, the Corporations' $6 million in debt.
Plaintiffs also bring causes of action for breach of fiduciary duty and unjust enrichment, and seek a declaratory judgment against Defendants.

II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R.Civ.P. Rule 12(b)(6) ("Rule 12(b)(6)") should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993).

III. DISCUSSION

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) on the following grounds: (1) Plaintiffs' breach of contract claims, except those related to breach of the Settlement Agreement, are precluded by a provision of the Settlement Agreement which releases Defendants from all prior claims; (2) Plaintiffs' breach of contract claims fail because Hurowitz and Long were not parties to any agreements entered into between Plaintiffs and the Corporations, and the allegations set forth in the Complaint are insufficient to permit piercing of the corporate veil to find Defendants personally liable; (3) Plaintiffs fail to state a claim for fraud because (a) Plaintiffs fail to plead fraud with the requisite particularity pursuant to Fed.R.Civ.P. 9(b) ("Rule 9(b)"), (b) Plaintiffs' fraud claims are duplicative of their breach of contract claims and barred by the economic loss rule, and (c) Plaintiffs have not adequately pled the elements of fraud; (4) Plaintiffs' breach of fiduciary duty claim is precluded because Hurowitz and Long did not owe a fiduciary duty to Plaintiffs; (5) Plaintiffs' unjust enrichment claim fails because it is brought in conjunction with breach of contract claims; and (6) Plaintiffs' declaratory judgment claim is duplicative of the other claims and is therefore legally deficient. Each of these arguments is addressed below.
A. BREACH OF CONTRACT CLAIMS
1. The Release Provision
Defendants argue that Plaintiffs' breach of contract claims related to the Joint Venture Agreement must be dismissed on the grounds that a provision in the Settlement Agreement releases Hurowitz and Long from all prior claims. The provision reads as follows:
Upon receipt of the Promissory Notes and Guarantee, Defendants agree to and do release and forever discharge Plaintiff,[2] MHSI and Four Seasons and their respective officers, directors, employees, agents, successors and assigns (collectively with Plaintiff, MHSI and Four Seasons, the "Releasees") from any and all claims, debts, demands, actions, causes of action, obligations, damages, [and] liabilities . . . of every kind, nature and description whatsoever, whether asserted or unasserted, which Defendants ever had, now have, or claim to have *238 against the Releasees . . . from the beginning of time until the date of this Agreement . . . provided, however, that it is understood and agreed that this Agreement does not extend to or release any claim or cause of action for breach of any provision of this Agreement or of the Promissory Note or Guarantee; and further provided, that in the Event of Default . . . by any Plaintiff Party, the terms of this Agreement (including this release) may, at the sole discretion of Defendants, be rendered ineffective, null, and void, whereupon the parties shall be restored to the status quo ante this Agreement.
(Settlement Agreement at ś 3(a) ("the Release Provision"), undated, attached as Exhibit A to Dfs.' Mem.) (emphasis in original).[3]
Plaintiffs assert that the Release Provision does not bar their breach of contract claims against Defendants because the Settlement Agreement provides that in the event of default, Plaintiffs may declare that agreement void. Plaintiffs allege default and assert that the Release Provision of the Agreement is "hereby deemed to be ineffective, null and void pursuant to the terms of the settlement agreement." (Compl. at ś 37.)
Plaintiffs' breach of contract claims related to the Joint Venture Agreement are barred by the election of remedies doctrine. New York's "election of remedies" doctrine provides that "one may not both affirm and disaffirm a contract . . . or take a benefit under an instrument and repudiate it." Lumber Mut. Casualty Ins. Co. of N.Y. v. Friedman, 176 Misc. 703, 28 N.Y.S.2d 506, 506 (N.Y.Sup.Ct. 1941) (quotations omitted). See also, Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 768 F.Supp. 115, 117 (S.D.N.Y.1991) (stating rule that plaintiff cannot recover damages for fraud and also win rescission pursuant to the election of remedies rule because "an award of damages for fraud affirms the contract" while "rescission vitiates the contract and places the parties in status quo prior to the transaction.") The election of remedies rule bars the pursuit of alternative relief after a party has "chosen one of two or more coexisting inconsistent remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment." 331 East 14th St. LLC v. 331 East Corp., 293 A.D,2d 361, 740 N.Y.S.2d 327 (App. Div. 1st Dep't 2002) (quoting Prudential Oil Corp. v. Phillips Petroleum Co., 418 F.Supp. 254, 257 (S.D.N.Y.1975) (quotations omitted)). Plaintiffs elected to affirm the continued validity of the Settlement Agreement by bringing an action for breach of the Settlement Agreement against the Corporations, obtaining a judgment, and seeking to enforce that judgment against the Corporations. Plaintiffs have "gained an advantage" through this course of action, in that they hold judgments against the Corporations. Pursuant to the election of remedies doctrine, Plaintiffs' affirmance of the Settlement Agreement in its suit against the Corporations precludes a subsequent action premised on Plaintiffs' disaffirmance of the Agreement. See Lumber, 28 N.Y.S.2d at 509.
Plaintiffs argue that the doctrine of election of remedies does not bar their breach *239 of contract claims because while the doctrine bars pursuit of inconsistent remedies for breach of contract, the remedies they pursue by this action are consistent with the remedies Plaintiffs sought against the Corporations. The Court is not persuaded. See Simon v. Boyer, 51 A.D.2d 879, 380 N.Y.S.2d 178, 181 (App. Div. 4th Dep't 1976) ("For purposes of the doctrine of election of remedies, inconsistent remedies are those which proceed on opposite and irreconcilable claims of rights.") (citations omitted).
Plaintiffs further argue that the election of remedies doctrine does not bar their breach of contract claims because another provision of the Settlement Agreement specifically authorizes Plaintiffs to pursue multiple remedies for breach of the Settlement Agreement. Plaintiffs cite paragraph 5 of the Settlement Agreement (the "Waiver Provision"), which states that "all rights and remedies hereunder are cumulative and the exercise of any one right or remedy shall not be deemed a waiver or release of any other right or remedy." Plaintiffs argue that the Waiver Provision authorizes Plaintiffs to both (1) seek remedies for breach of the Settlement Agreement against the Corporations and (2) declare the Settlement Agreement void and seek remedies for breach of the underlying obligations.
In ESPN, Inc. v. Office of the Commissioner of Baseball, defendants argued that a similarly worded provision permitted pursuit of inconsistent remedies barred by the election of remedies doctrine. See 76 F.Supp.2d 383, 390 (S.D.N.Y.1999). In ESPN, the defendant sought termination of an agreement based on an alleged breach. However, the plaintiff argued that such termination was barred by the election of remedies doctrine because defendants had continued to perform and accept performance under the agreement subsequent to the alleged breach. See id. at 388. The defendant argued that although it continued to perform under the contract after the breach, its ability to terminate the agreement based on those breaches was preserved by the contract's "no waiver" provision. The provision contained language almost identical to the Waiver Provision cited here: "The various rights and remedies of either party contained herein shall not be considered exclusive of, but shall be considered cumulative to, any rights or remedies now or hereafter existing at law, in equity or by statute." Id. at 391. The ESPN court held that the provision did not authorize plaintiffs to avoid the election of remedies doctrine. The court explained that "waiver and election are distinct principles that do not overlap but rather control different phases of the contractual relationship." Id. at 390. Waiver governs the parties' right to seek certain remedies for nonperformance and determines whether something has occurred to "alter or eliminate a term of the parties' agreement or an available remedy." Id. In contrast, the election doctrine requires that parties exercise remedies in "a consistent and binding manner." Id. The ESPN court concluded that the provision cited by the plaintiffs was a "standard `no-waiver' provision" that did not excuse the parties from the consequences of election. Id.
The Court finds the ESPN analysis compelling, and thus concludes that the Waiver Provision does not excuse Plaintiffs from the consequence of their election. Therefore, Plaintiffs' breach of contract claims, with the exception of those based on breach of the Settlement Agreement, are dismissed with prejudice.
2. Veil-Piercing Allegations

a. Choice of Law

To maintain a claim for breach of the Settlement Agreement against Defendants, and hold Defendants personally liable, *240 Plaintiffs must adequately plead that circumstances exist that warrant "piercing the corporate veil" of the Corporations. The parties disagree as to which state's law applies to the analysis of this issue. Defendants argue that the law of the states in which MHPG and Four Seasons are incorporated governs, while Plaintiffs argue that New York law governs.
The Settlement Agreement contains a choice of law term providing that the Agreement is governed by New York law. Under New York's choice of law principles, the law of the jurisdiction having the greatest interest in the litigation will be applied. See Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir.1993). Plaintiffs argue that New York has the greatest interest in the outcome of the instant dispute because (a) the parties specified in the Settlement Agreement that New York law would govern actions involving disputes of the Settlement Agreement; (b) the Settlement was executed in New York; and (c) the default judgments against the Corporations with respect to their breach of the Settlement Agreement were entered in New York.
However, under New York choice of law principles, the "facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." Id. In Kalb, the Second Circuit explained that because the purpose of state corporation law is to insulate shareholders from legal liability, the state of incorporation has the paramount interest "in determining when and if that insulation is to be stripped away." Id. (citing Soviet Pan Am Travel Effort v. Travel Comm., Inc., 756 F.Supp. 126, 131 (S.D.N.Y.1991)). Therefore, the general rule is that the law of the state of incorporation determines when the corporate form will be disregarded. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir.1995); see also Mikropul Corp. v. Desimone & Chaplin-Airtech, Inc., 599 F.Supp. 940, 942 (S.D.N.Y.1984). Accordingly, the Court concludes that the law of Massachusetts and South Carolina determines whether Plaintiffs' veil-piercing allegations are adequately pled.

b. The Applicable Pleading Standard

Another threshold question concerns the degree of specificity required to adequately plead facts in support of piercing the corporate veil. Pleadings are generally subject to the liberal standard set out in Fed.R.Civ.P. 8(a) ("Rule 8(a)"), which requires merely a short and plain statement of the claim showing that the pleader is entitled to relief. However, allegations sounding in fraud are subject to a heightened pleading standard pursuant to Rule 9(b).
The issue of which pleading standard applies to veil-piercing allegations has been described as a "knotty question." Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361, 374 (S.D.N.Y.1997) (citing Farley v. Davis, No. 91 Civ. 5530, 1992 WL 110753, at *6 (S.D.N.Y. May 8, 1992)). The analysis employed by the court in Network Enterprises, Inc. v. APBA Offshore Productions, Inc. provides a useful explication of the issue. See No. 01 Civ. 11765, 2002 WL 31050846, at *4-5 (S.D.N.Y. Sept.12, 2002). The Network court explained that "because the predicate for application of corporate veil piercing is the commission of a fraud or wrong, not every claim based on the theory must meet the more exacting standards of Rule 9(b)."[4]Id. (emphasis in *241 original). The Network court further explained that the Rule 9(b) pleading standard applies only to those components of fraud-based claims that relate to fraud. Thus, allegations of dominance and control, for example, are not subject to the heightened pleading standard, even where the veil-piercing claim is based on an allegation that the corporate form was abused to perpetrate fraud. See id.
In Network, the plaintiff alleged that the defendant had abused the corporate form to (1) breach a contract and (2) fraudulently convey assets rendering the corporation insolvent. The Network court held that the Rule 8(a) liberal pleading standard applied to the extent that the allegations were based on an alleged breach of contract, but that those allegations founded upon fraudulent conveyance were subject to the heightened Rule 9(b) standard. See id. at *5.
Here, the Complaint similarly alleges that the corporate form was abused in order to perpetuate both fraud and other injury, including the transfer of funds away from the Corporations to shield the funds from creditors. The Complaint alleges that the Defendants "looted the assets of MHPG and Four Seasons" and that "some of such assets and corporate opportunities of those companies were transferred to other corporations in order to avoid the reach of creditors" (Compl. at ś 33). The Complaint elsewhere alleges that Defendants "fraudulently transferr[ed] away assets and business opportunities of MHPG and Four Seasons to other companies with the intent to defraud Plaintiffs," and "transferr[ed] proceeds of the sales of Plaintiffs' merchandise to the Defendants' corporations' lenders." (Compl. at ś 41.) To the extent that the allegations claim fraudulent conveyance, the allegations are subject to the heightened pleading standard of Rule 9(b). However, the liberal pleading standards of Rule 8(a) apply to those allegations premised on harm other than fraud and to those components of fraud-based allegations that do not relate to fraud, such as allegations of dominance and control.

c. Piercing of Corporate Veil Under Massachusetts Law

Under Massachusetts law, piercing the corporate veil may be appropriate where (1) there is "active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities"; or (2) there is "a confused intermingling of activity of two or more corporations . . . with substantial disregard of the separate nature of the corporate entities." Evans v. Multicon Constr. Corp., 30 Mass.App.Ct. 728, 574 N.E.2d 395, 398 (1991) (quotations and citations omitted). These criteria are further broken down into twelve considerations: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets or management; (4) thin capitalization; (5) non-observance of corporate formalities; (6) absence of corporate records; (7) no payments of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; *242 and (12) use of the corporation in promoting fraud. See id.
Plaintiffs allege that Hurowitz was the majority shareholder in MHPG; that Hurowitz was an officer of MHPG; that MHPG was insolvent at the time that the Joint Venture Agreement and Settlement Agreement were made; that Hurowitz made misrepresentations and concealed material facts from Plaintiffs that induced Plaintiffs to enter into various agreements with MHPG; that Hurowitz completely dominated and controlled MHPG; that MHPG was not capable of making decisions independently of Hurowitz; and that "on information and belief," Hurowitz had pervasive control of MHPG, looted the assets of the corporation, used MHPG as a vehicle to conduct his own personal business, and used his control over MHPG to promote fraud. (See Compl. at śś 31, 32, 33.)
While the preceding allegations relate to only six of the twelve specified considerations, the Court concludes that, on balance, these allegations are sufficient to support a veil-piercing claim at this prediscovery stage. The determination of whether the allegations are sufficient to support a claim to pierce the corporate veil is not merely an exercise in counting the number of factors met; rather, a court should examine the complete picture of whether the over-all operation and structure of the corporation misleads. See Evans, 574 N.E.2d at 400.
Defendants argue that the allegations related to piercing the corporate veil are inadequately pled because several of the allegations are alleged in a conclusory fashion. While conclusory allegations made "in the absence of any alleged factual basis" are insufficient to withstand a motion to dismiss, see Omni-Wave Elecs. Corp. v. Marshall Indus., 127 F.R.D. 644, 647 (D.Mass.1989), Plaintiffs' allegations are sufficient because Plaintiffs go beyond mere conclusory statements with respect to at least some of the considerations for veil-piercing.
Defendants also argue that the allegations are insufficient to support piercing the veil because several are alleged "on information and belief." Allegations "on information and belief" are generally insufficient to fulfill the requirements of Rule 9(b), except where the allegations relate to facts that are "peculiarly within the opposing party's knowledge" and are accompanied by a statement of the facts upon which the belief is grounded. See Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir.1991); Old Republic, 170 F.R.D. at 374.
Plaintiffs allege "on information and belief" that Defendants: (1) used MHPG and Four Seasons as "vehicles to conduct their own personal business and as instrumentalities to defraud Plaintiffs" (Compl. at ś 32.) and (2) "fraudulently transferred" assets of MHPG. (See Compl. at ś 40.) To the extent that these allegations are based on fraud and thus subject to the requirements of Rule 9(b), the allegations are insufficient. The claims are alleged "on information and belief' and are not accompanied by a statement of the facts upon which the belief is grounded. However, the Court concludes that even if these allegations are discounted as insufficiently pled, the remaining veil-piercing allegations are sufficient to sustain a claim for veil-piercing at this pre-discovery stage. See Network, 2002 WL 31050846, at *4.

d. Piercing of Corporate Veil Under South Carolina Law

Courts apply a similar test to determine whether veil-piercing allegations are sufficient under South Carolina law. The first prong of the two-pronged test consists of eight considerations: (1) whether the corporation was grossly undercapitalized; (2) its failure to observe corporate formalities; (3) non-payment of *243 dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation was merely a facade for the operations of the dominant stockholder. The second prong of the test requires that "there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the [shareholders]." Sturkie v. Silly, 280 S.C. 453, 313 S.E.2d 316, 318 (App.1984). To prove fundamental unfairness, the plaintiff must establish that (1) the defendant was aware of the plaintiff's claim against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property. See Dumas v. InfoSafe, 320 S.C. 188, 463 S.E.2d 641, 644 (App.1995) (citing Cumberland Wood Prods. v. Bennett, 308 S.C. 268, 417 S.E.2d 617, 619 (App.1992)).
South Carolina courts have held that some factors in the Sturkie test should be given greater weight than others to reflect changes in corporate law enacted after Sturkie that reduced the formalities required of certain categories of corporations. See Hunting v. Elders, 359 S.C. 217, 597 S.E.2d 803, 807 (App.2005). The Sturkie factors which should be granted lesser weight in the analysis are: (1) failure to observe corporate formalities, (2) non-functioning of other officers or directors, (3) the absence of corporate records, and (4) the nonpayment of dividends. See id.
The Complaint alleges that (1) Four Seasons was insolvent; (2) Long looted assets of Four Seasons; and (3) Four Seasons was a facade for the operations of the dominant stockholder. The conclusion to disregard the corporate entity "must involve a number of the eight factors, but need not involve them all." Dumas, 463 S.E.2d at 644. Plaintiffs have alleged facts related to three of the four most important Sturkie factors. Accordingly, Plaintiffs' allegations are sufficient to meet this prong of the test.
The Complaint also alleges injustice or fundamental unfairness. The essence of the fairness test is "simply that an individual businessman cannot be allowed to hide from the normal consequence of carefree entrepreneuring by doing so through, a corporate shell." Id. Plaintiffs allege that the corporate form was abused in order to perpetuate fraud, to avoid contractual duties, and to transfer assets out of the corporation to shield the assets from Plaintiff. These allegations of abuse of the corporate form are sufficient to fulfill the second prong of the test.
B. FRAUD CLAIMS
As set forth below, in Section B.4, Plaintiffs' fraud claims are dismissed, without prejudice, for failure to plead with the requisite particularity pursuant to Rule 9(b). Defendants argue that amendment of the fraud claims would be futile because the fraud claims are duplicative of the Plaintiffs' breach of contract claims. The Court addresses this argument here.
1. Plaintiffs' Fraud Claims Are Not Duplicative of Plaintiffs' Breach of Contract Claims
Where a plaintiff alleges both a breach of contract and a fraud claim arising from the same series of events, New York courts have been cautious in sustaining an independent fraud claim. See TVT Records v. Island Def Jam Music Group, 244 F.Supp.2d 263, 275 (S.D.N.Y.2003). To state a fraud claim in conjunction with a breach of contract claim, a plaintiff must allege either: (1) the violation of a legal duty separate and apart from the contractual duty to perform, (2) a fraudulent representation collateral or extraneous to the *244 contract, or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir.1996). The Complaint alleges that Defendants violated an independent affirmative duty to disclose material facts and that Defendants made fraudulent representations and concealed material facts concerning their intent and ability to perform under the Agreements. Below, the Court considers whether these allegations are sufficient to support a fraud claim.

a. Violation of an Independent Duty

New York recognizes a duty by a party to a business transaction to disclose material facts in certain circumstances, including where the party has made a partial or ambiguous statement; when the parties stand in a fiduciary or confidential relationship with each other; and where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge. See Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993). Plaintiffs allege that Defendants owed a duty to disclose the financial condition of the Corporations arising from the Defendants' fiduciary duty to Plaintiffs as joint venturers. (See Compl. at ś 38.)[5] Plaintiffs also allege a duty to disclose on the grounds that (1) Defendants had superior knowledge of the Corporations' financial condition; (2) information about the Corporations' financial condition was not readily available to Plaintiffs; and (3) Defendants were aware that Plaintiffs were operating under a mistaken perception regarding to the financial condition of the Corporations. (See Compl. at ś 21.) As Plaintiffs may be able to demonstrate an independent duty of disclosure consistent with these allegations, Plaintiffs' fraud allegations are sufficient to support a fraud claim. See Sclieuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.E d.2d 90 (1974).

b. Misrepresentations Concerning Intent

Plaintiffs also allege misrepresentations of material fact concerning Defendants' intent to perform under the Agreements. The New York Court of Appeals has held that "a contractual promise made with the undisclosed intent not to perform constitutes fraud." Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906, 908 (1957); see also Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003, 1004 (1986); Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833, 835 (1958); Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 653 N.E.2d 1179, 1184 (1995). However, numerous Appellate Division cases have diverged from this rule, applying "precisely the opposite rule," specifically, that allegations of false statements of intent to perform contractual obligations are not sufficient to support a fraud claim. Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498, 2000 WL 420546, at *6, n. 4 (S.D.N.Y. April 18, 2000) (collecting cases).[6]
*245 The Second Circuit has applied the Appellate Divisions' rule that "[a] cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into `a contract with no intention of performing." Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir.1995). Most recently, the Second Circuit reiterated this doctrine in TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 90-91 (2d Cir.2005); see also Bridgestone/Firestone, 98 F.3d at 20 (holding that misrepresentations of intent to perform under a contract are not sufficient to support a claim of fraud under New York law); see also Papa's-June, 921 F.Supp. at 1160-62; Cougar, 2000 WL 420546, at *6, n. 4. But see Stewart v. Jackson & Nash, 976 F.2d 86, 88-89 (2d Cir.1992) (holding that false statements of present intent not to perform promises are actionable fraud). Pursuant to this rule, Plaintiffs' allegations of false statements of intent to perform under the Agreements are insufficient, standing alone, to support Plaintiffs' fraud claim. However, Plaintiffs' additional allegations that Defendants made false statements about the Corporations' financial condition to induce Plaintiffs to enter into the Joint Venture Agreement and the Settlement Agreement adequately support a separate fraud claim.

c. Misrepresentations Concerning the Corporations' Financial Condition

In Stewart v. Jackson & Nash, the Second Circuit held that misrepresentations regarding "present facts," as opposed to promises reflecting an intent of perform in the future, may be actionable as fraud. 976 F.2d at 89; see also, EED Holdings v. Palmer Johnson Acquisition Corp., 387 F.Supp.2d 265, 279 (S.D.N.Y. 2004). The Second Circuit also applied this rule in Cohen v. Koenig, where the Circuit Court held that a defendant's alleged intentional overstatements of its net income and the value of its current assets, which induced entry into a contract, were actionable as fraud. See 25 F.3d 1168, 1172 (2d Cir.1994). Similarly, in EED Holdings, the court held that misrepresentations concerning the "present condition of defendant's finances and operations" that induced entry into a contract were actionable as fraud. 387 F.Supp.2d at 279.
As in Cohen and EED Holdings, Defendants' alleged false statements concerning the Corporations' financial condition are false statements of "present fact" that allegedly induced Plaintiffs' entry into the Agreements. According, these allegations support a fraud claim. See Deerfield, 510 N.Y.S.2d 88, 502 N.E.2d at 1004; Cohen, 25 F.3d at 1172; EED Holdings, 387 F.Supp.2d at 279. But see, Best Western, *246 1994 WL 465905, at *5 ("Because the representations at issue concern nothing more than ability and willingness to perform under the Agreement . . . the Court finds that the claim is nothing more than an attempt to dress up a breach of contract claim as a tort claim.") (emphasis added).

d. The Economic Loss Rule

Defendants further assert that Plaintiffs' fraud claims are precluded by the "economic loss rule." The economic loss rule has been applied by the New York courts to restrict recovery on fraud claims by plaintiffs who have suffered "economic loss," but not personal or property injury, "to an action for the benefit of their bargains."[7]Carmania Corp. v. Hambrecht Terrell Int'l, 705 F.Supp. 936, 938 (S.D.N.Y.1989). Pursuant to this rule, where a plaintiff seeks damages that are of the type "essentially contractual in nature," a plaintiff may not recover in tort. See Hydro Investors v. Trafalgar Power Inc., 227 F.3d 8, 16 (2d Cir.2000). The rule has most frequently been invoked in the context of product liability, where "economic losses are essentially contractual in nature," and risks for such harm are appropriately allocated by the parties through mechanisms such as warranties, insurance, and purchase price. See id. (citing 5th Ave. Chocolatiere, Ltd. v. 540 Acquisition Co., 272 A.D.2d 23, 712 N.Y.S.2d 8, 11 (App. Div. 1st Dep't 2000)).
Courts in this district have disagreed about whether the economic loss rule applies to fraud claims. Some district courts have concluded that the rule does not apply to fraud causes of action, noting that the New York courts have not explicitly applied the rule to bar such claims. See EED Holdings, 387 F.Supp.2d at 277-78; Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, No. 03 Civ. 9141, 2004 WL 1933621, at *6 (S.D.N.Y. Aug.30, 2004); Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 Civ. 2628, 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004). Other courts, including this Court, have held that the economic loss rule may bar a fraud claim where the damages sought are essentially contractual, "benefit-of-the-bargain" damages rather than appropriate tort damages. See, e.g., Shred-It USA Inc. v. Mobile Data Shred, 222 F.Supp.2d 376, 379 (S.D.N.Y.2002) (holding that fraud claim was barred on several grounds, including the economic loss rule); Orlando v. Novurania of America, Inc., 162 F.Supp.2d 220, 225-26 (S.D.N.Y.2001) (holding that a fraudulent inducement claim was precluded under the economic loss rule where the plaintiff was "attempting solely to recover for the alleged loss of the benefit of his bargain").
While the Second Circuit has not explicitly addressed whether fraud claims are exempted from the economic loss rule, the Circuit Court has emphasized the principle that a plaintiff cannot sustain a fraud claim where no characteristically tort damages are alleged. See, e.g., Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 794 (2d Cir.1986); see also, Bruce v. Martin, No. 90 Civ. 0870, 1993 WL 148904, at *5 (S.D.N.Y. April 30, 1993). In Fort *247 Howard, for example, the Circuit Court held that the plaintiff stated a separate fraud claim on the ground that plaintiff sought to recover out-of-pocket damages as well as the benefit of his bargain. See 787 F.2d at 794. Similarly, in Bruce, the court emphasized that to state a claim for fraud, a plaintiff must plead damages apart from the damages arising from breach of the underlying contract. See 1993 WL 148904, at *5.
Plaintiffs here allege that as a result of the fraudulent inducement by Defendants, Plaintiffs incurred costs in excess of $2 million in the manufacture and shipment of garments to the Corporations. Plaintiffs seek compensation for these costs. The damages Plaintiffs seek, amounting to compensation for the out-of-pocket expenditures incurred as a result of alleged tortious conduct, are distinctly tort damages. Under well-settled doctrine, damages for tortious conduct are intended "to restore a party to the position occupied before commission of the fraud." Alpert v. Shea Gould Climenko & Casey, 160 A.D.2d 67, 559 N.Y.S.2d 312, 314 (App. Div. 1st Dep't 1990) (citations omitted). "Out-of-pocket" costs incurred as a result of fraud are thus recoverable in fraud actions. See Ostano Commerzanstalt v. Telewide Systems, Inc., 794 F.2d 763, 766 (2d Cir.1986); Enzo Biochem, Inc. v. Johnson & Johnson, 1992 WL 309613, at *12 (S.D.N.Y. 1992). While the Plaintiffs here allege out-of-pocket expenses in the same amount as their alleged contractual damages, some types of financial injuries, including out-of-pocket costs, conceivably may qualify as both tort and contract damages under appropriate circumstances. See, e.g., G.D. Searle & Co. v. Medicore Communications, Inc., 843 F.Supp. 895, 907 (S.D.N.Y. 1994) (awarding plaintiff damages for "out-of-pocket" expenses incurred as a result of a breach of contract, noting that "it is well settled that where the plaintiff has made money payments to the defendant, and . . . defendant materially breaches the contract, the plaintiff can maintain an action for restitution of the money so paid to the defendant, with interest.") (quoting In re Men's Sportswear, Inc., 834 F.2d 1134, 1141 (2d Cir.1987)).
Of course, Plaintiffs could not recover for the same out-of-pocket costs on both claims and would be compelled to elect one remedy if they were to prevail on both claims. See, e.g., Ostano Commerzanstalt v. Telewide Systems, Inc., 880 F.2d 642, 649 (2d Cir.1989) ("It is true . . . that the plaintiffs cannot recover both benefit-of-the-bargain damages for breach of contract and warranty and out-of-pocket expenses for fraud. Such a double recovery would put them in a better position than they would have been in had the contract been satisfactorily performed.") (emphasis in original); see also Topps Co., Inc., v. Cadbury Stani S.A.I.C., 380 F.Supp.2d 250, 268 (S.D.N.Y.2005) (noting that plaintiff asserting both a tort and a breach of contract claim could not be awarded "dual compensatory damages," which could constitute a "windfall recovery"). Because the losses alleged here are appropriate tort damages, the economic loss rule does not bar the Plaintiffs' fraud claims.

e. Punitive Damages

Plaintiffs also seek punitive damages in connection with their fraud claims and fiduciary duty claims. For the reasons set forth below, the Court concludes that Plaintiffs have failed to state a claim for punitive damages in connection with their fraudulent inducement claims.
To recover punitive damages for a tort claim that "arises from" a related contract claim, a plaintiff must demonstrate that the alleged misconduct was aimed at the public generally and that the misconduct evinced a "high degree of moral turpitude" such as to imply a "criminal indifference to civil obligations." Rocanova *248 v. Equitable Life Assurance Soc'y of U.S., 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940, 943-44 (N.Y.1994) (citing Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497, 499 (1961)). Courts in this district have disagreed as to whether fraudulent inducement claims "arise from" related contract claims. See, e.g., Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 382 F.Supp.2d 411, 422 (S.D.N.Y.2003) (holding that public harm rule applies to fraudulent inducement claims because such claims "arise from" related contract claims); Topps, 380 F.Supp.2d at 265-6 (rejecting argument that fraudulent inducement claims "arise from" related contract claims but concluding that fraudulent inducement claims alleged by plaintiff were subject to the public harm rule because the claims arose from a contractual relationship that predated formation of the contract at issue).
The New York Court of Appeals' analysis in New York University v. Continental Insurance Company suggests that fraudulent inducement claims "arise from" related contract claims and are thus subject to the public harm rule. See 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 768 (N.Y.1995). There, the Court of Appeals applied the four-step test set out in Rocanova to determine whether punitive damages were recoverable in connection with a fraudulent inducement claim. The New York University court noted that the Rocanova test applied to claims that "arose from" contract claims and articulated the applicable standard as follows: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be egregious in nature; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally. See id. The Court of Appeals' application of the Rocanova analysis to a fraudulent inducement claim suggests that the public harm rule applies to such claims. See Merrill Lynch, 382 F.Supp.2d at 423; Day Spring Enters., Inc. v. LMC Int'l, Inc., No. 98 Civ. 0658A, 2004 WL 2191568, at *29 (W.D.N.Y. Sept.24, 2004); Zuccarini v. Ziff-Davis Media, Inc., 306 A.D.2d 404, 762 N.Y.S.2d 621, 623 (App. Div.2d Dep't 2003) (holding that punitive damages are not available in fraudulent inducement claim where no public harm is alleged); see also TVT, 412 F.3d at 94-95. But see, Topps, 380 F.Supp.2d at 265-66. Pursuant to this authority, the Court concludes that the public harm requirement applies to Plaintiffs' fraudulent inducement claim. Since no public harm is alleged here, Plaintiffs' claim for punitive damages in connection with their fraud claim is dismissed.
2. Particularity Requirements
While Plaintiffs' fraud allegations are not barred as duplicative of Plaintiffs' contract claims, Plaintiffs' fraud claims are dismissed, without prejudice, on the ground that Plaintiffs failed to meet the heightened pleading standard for fraud allegations set forth in Rule 9(b). To allege fraud with the particularity required pursuant to Rule 9(b), a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir.1996). The Complaint fails to specify the content of the alleged false statements, fails to state where and when particular statements were made, and fails to identify which of the two Defendants made each statement or omission. "Where fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." *249 Ellison v. Am. Image Motor Co., 36 F.Supp.2d 628, 641-42 (S.D.N.Y.1999).
Furthermore, the Complaint includes certain inconsistent factual allegations. It alleges that Defendants concealed facts about the financial difficulties of the Corporations "starting in September of 2001" (Compl. at ś 36.) and that this concealment played a role in fraudulently inducing Plaintiffs to enter into the Settlement Agreement. However, the Complaint elsewhere alleges that the Settlement Agreement was executed on July 31, 2001. (See Compl. at ś 22.) Concealment of facts in September 2001 could not have played a role in inducing Plaintiffs to enter into the Settlement Agreement in July 2001.
As a result of Plaintiffs' failure to plead with the required degree of specificity and the inconsistency cited above, Plaintiffs' fraud claims are dismissed without prejudice. Plaintiffs are granted leave to file an amended complaint within thirty days of the date of this Order.
C. BREACH OF FIDUCIARY DUTY
Defendants argue that Plaintiffs fail to state a claim for breach of fiduciary duty because Defendants do not owe a fiduciary duty to Plaintiffs. The Complaint alleges that Defendants owe a fiduciary duty to Plaintiffs arising from the relationship between Plaintiffs and Defendants as joint venturers. (See Compl. at ś 50.) Defendants argue that this allegation is insufficient because the Defendants did not personally enter into the Joint Venture Agreement. However, as the Court has concluded that the Complaint sufficiently supports a claim for piercing of the corporate veil, at least at this pre-discovery stage of the litigation, Plaintiffs may be able to demonstrate, after discovery, that piercing the veil is warranted. If veil-piercing is warranted, Defendants may be personally liable for breach of fiduciary duty. Therefore, Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claim is denied.
D. UNJUST ENRICHMENT
Under the New York doctrine of unjust enrichment, courts may infer the existence of an implied contract to permit one person who has obtained a benefit from another from unjustly enriching himself at the party's expense. See Mathias v. Jacobs, 238 F.Supp.2d 556, 571 (S.D.N.Y.2002) (citations omitted). The rule applies to situations where, absent a valid agreement governing legal relationships in a particular transaction, the party sought to be charged has possession of money or other property that "in good conscience and justice he should not retain, but should deliver to another." Id. (quoting Matarese v. Moore-McCormack Lines, 158 F.2d 631, 634 (2d Cir.1946)). It is a general rule under New York law that no claim for unjust enrichment lies where the subject matter of the claim is covered by a written contract. See id. However, this rule applies only when the existence of a contract governing the transaction in question is undisputed. See id. Here, the parties disagree as to whether the Joint Venture Agreement and the Settlement Agreement are binding on the Defendants as "alter egos" of the signatories to the Agreements. Accordingly, Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is denied.
E. DECLARATORY JUDGMENT CLAIM
Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action. Accordingly, the declaratory judgment claim *250 is dismissed. See, e.g., Del Greco v. CVS Corp. 337 F.Supp.2d 475, 488 (S.D.N.Y. 2004).

IV. ORDER

For the foregoing reasons, it is hereby
ORDERED that the motion to dismiss filed by defendant David Hurowitz ("Hurowitz") be deemed to have been made also on behalf of defendant Judy B. Long ("J.Long"); and it is hereby
ORDERED that the motion of Hurowitz and J. Long (collectively, "Defendants"), to dismiss the complaint of plaintiffs Sofi Classic, S.A. de C.V. and Grupo Industrial Miro, S.A. de C.V. (collectively, "Plaintiffs"), is hereby GRANTED in part and DENIED in part, as follows: (1) Plaintiffs' claims alleging breach of the joint venture agreement and breach of contractual obligations related to the joint venture agreement are dismissed; (2) Plaintiffs' request for a declaratory judgment is dismissed; (3) Plaintiffs' fraud claims are dismissed without prejudice to Plaintiffs, subject to leave to file an amended complaint within thirty days of the date of this Order; (4) Defendants' motion to dismiss Plaintiffs' claims alleging breach of the settlement agreement entered into on July 31, 2001, unjust enrichment, and breach of fiduciary duty, is DENIED.
SO ORDERED.
NOTES
[1] The factual summary presented herein derives from the Complaint, dated October 14, 2005.
[2] "Plaintiff" here refers to MHPG. (See Settlement Agreement, undated, attached as Exhibit A to Memorandum of Law in Support of Defendant David Hurowitz's Motion to Dismiss, dated February 3, 2006 ("Dfs.' Mem."), at first unnumbered paragraph.)
[3] In deciding a Rule 12(b)(6) motion, courts may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 99-89 (2d Cir. 2000) (citations omitted); see also Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir.1989). Plaintiffs cite to and rely on the Settlement Agreement in the Complaint. (See Compl. at ś 37.) Accordingly, it is appropriate for the Court to consider the Settlement Agreement.
[4] Although the analysis in Network is grounded in New York law on piercing the corporate veil, the same analysis applies under Massachusetts and South Carolina law. Just as New York law permits veil piercing based on the commission of a fraud or wrong, Massachusetts permits veil piercing where there is "fraudulent or injurious consequence." See Evans v. Multicon Const. Corp., 30 Mass.App. Ct. 728, 574 N.E.2d 395, 398 (1991) (quotations and citations omitted) (emphasis added). Similarly, South Carolina permits veil piercing in the absence of fraud, requiring only that the plaintiff allege an "injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the [shareholder]." Sturkie v. Sifly, 280 S.C. 453, 313 S.E.2d 316, 318 (App.1984).
[5] However, the Complaint does not allege that Defendants had a fiduciary or confidential relationship with Plaintiffs prior to the formation of the Joint Venture Agreement. In other words, Plaintiffs do not allege that Defendants had an affirmative duty to disclose arising from a fiduciary or confidential relationship at the time Defendants negotiated the Joint Venture Agreement.
[6] While the Second Circuit has not addressed the apparent discrepancy between the rule articulated by the New York Court of Appeals and the rule applied by the Appellate Divisions, several district courts have considered the problem and reached differing conclusions about how to reconcile the apparent inconsistency. In Papa's-June Music, Inc. v. McLean, for example, the court noted that several of the touchstone Court of Appeals decisions, including Sabo and Graubard, involve misrepresentations of intent to perform promises that are peripheral to the contractual obligations at issue in the proceeding. See 921 F.Supp. 1154, 1160-61 (S.D.N.Y.1996). The Papa's-June court suggested that the Court of Appeals' rule should be read to apply only to such peripheral promises. Id. at 1161-62. The court in Best Western Int'l, Inc. v. CSI Int'l Corp., on the other hand, reconciled the apparent inconsistency by concluding that the Court of Appeals has acquiesced in the Appellate Divisions' reading of the rule because the Court of Appeals has not reversed any Appellate Division cases applying the Appellate Divisions' rule. See No. 94 Civ. 0360, 1994 WL 465905, at *5 (S.D.N.Y. Aug.23, 1994).
[7] Though the economic loss rule is frequently invoked, it is ordinarily with sparse analysis or explanation. Thus, there is a lack of clarity and precision regarding the doctrine's application, purpose, and rationale. As this Court perceives the concept and the basis for the distinction behind it, the "economic loss" contemplated by the rule would generally encompass types of injuries and resulting damages that embody future financial harmsâ as for example, potential lost profits, business opportunities, and earnings from a transactionâ that could be anticipated and bargained for in contracts, but ordinarily do not arise in claims of fraud. Damages in the latter case typically look back, and seek to make the injured party whole for monetary outlays actually incurred as a result of the deceitful conduct at issue.